S. M. HART & Co. *v.* THE MAYOR AND BOARD OF SELECTMEN OF THE
TOWN OF BATON ROUGE.

A tacit consent to the erection of a wharf in front of the property of the builder on the banks of
the Mississippi river, within the limits of the town of Baton Rouge, does not give to the owner the
exclusive use of the bank of the river covered by the wharf.

The banks of the river are public property, subject to be used by the public at large. C. C. 446.

An Act of the municipal council extending the public landing so as to include a wharf erected by
an individual, and allowing the lessee of the right of establishing and keeping a wharfboat, at the
steamboat landing to remove his boat to the end of that wharf, does not render the Town Council
liable to a claim for damages or for the value of the wharf thus erected by an individual for his
own use.

APPEAL from the District Court of the Parish of East Baton Rouge, *Robertson*, J. *Brunot & Herron*, for plaintiffs and appellants. *Seymour*, for defendants.

VOORHIES, J. The plaintiffs in their petition, after stating that they are the assignees of the firm of *Pike, Freleigh & Co.*, allege that "about three years past, this firm erected on the bank of the Mississippi river, and within the corporate limits of Baton Rouge, and in front of the store then occupied by them, a wharf for the convenience of trade or commerce in the shipment of merchandize and produce, and in the receipt thereof by them and for their benefit solely." The cost of this work is set down at $2,500, for which sum the plaintiffs aver they offered to sell it to the corporation of the town of Baton Rouge, which offer was not accepted. The petition proceeds to charge the defendants with having committed acts of ownership on their wharf, by extending the steamboat landing so as to include it, and authorizing the owners and keeper of the wharfboat thereby to use it; by converting their wharf to the use of the public and of said town authorities; and by repairing it for the public convenience, without allowing the petitioners any payment or compensation for these improvements, thus unjustly and wrongfully appropriated to the public use. The plaintiffs therefore pray, that the defendants be condemned to pay them said sum of $2,500, with legal interest.

The defendants, in their answer, specially deny that they have ever taken possession of the property in question, or authorized any one to do so; that the plaintiffs have never been obstructed in the use of their wharf, and that if any repairs have been made on it by the defendants, it was with the consent and at the instance of the plaintiffs, and in order to render the steamboat landing accessible and capable of being occupied.

The evidence shows that the plaintiffs erected in front of their warehouse on the river, a wharf, at a cost of about $2,500, beyond the landing established by the municipal authorities of the town of Baton Rouge. On the 16th of May, 1850, *William Markham* purchased at auction, " the exclusive right and privilege of establishing and keeping a wharfboat at the landing at Baton Rouge, known and designated as " the steamboat landing," for five years from the 16th May, 1850 ;" and on the 7th June, 1850, the Mayor, with the authorization of the Selectmen entered into the contract, guaranteeing those rights to *Markham*. This lessee, in compliance with the conditions of his contract, brought his wharfboat at the corporation landing on the 21st June, 1850, and, subsequently (30th July, 1850,) a proposition was made by the plaintiffs to the defendants to purchase their wharf for $2,500, payable in five equal annual installments, which offer was rejected. The plaintiffs had then the exclusive use of their wharf; but *Markham* being of opinion that this was in violation of his privilege, complained of it to the Selectmen, who thereupon granted him relief by extending the landing, so as to include the wharf and authorizing him thereby to remove his boat to the end of it.

The work erected by the plaintiffs for their exclusive benefit, as they allege, then became of service to the public at large, as well as to the plaintiffs themselves, who were never obstructed in the free enjoyment of their wharf. Sometime afterwards, on account of the caving from the soft nature of the land, and, probably to a certain extent, the constant use of it by the public, the wharf became dilapidated, so much so as to become dangerous. One of the plaintiffs, who was then a Selectman, having stated that his firm had already spent a good deal of money to erect it, and that the Selectmen might make the necessary repairs, if they thought proper, a resolution was passed, authorizing the repairs of the wharf to be made at the cost of the corporation. This was done at two different times, on the 1st of September, 1851, and the 9th of September, 1852.

This constitutes the substance of the evidence. The question then presents itself, are the defendants under any obligation to pay the plaintiffs the value of the work thus erected by them ? The petition distinctly charges, that the defendants have taken possession of their wharf, and have unjustly and wrongfully appropriated it to the public use. This clearly precludes the idea of the existence of any contract of sale between the parties; the evidence only shows a mere proposal to sell on certain terms of credit, and a refusal to purchase at all. It is however contended, that there was a subsequent acceptance of the plaintiffs' proposal before the defendants had altered their mind on the subject. In this we think they are not sustained by the evidence. It is idle to argue that the fact of repairing the plaintiffs' wharf, with their consent, amounted to a tacit consent to complete the sale; nor can any importance be attached to the act of the municipal council in extending the landing, so as to include the plaintiffs' wharf, and allow the lessee the right to remove his boat to the end of the plaintiffs' wharf. At all events, had the defendants evinced in due time an intention to close the bargain offered by the plaintiffs, it must have been with the understanding that the conditions were still the same; and when a credit of five years had been proposed, the acceptance must be qualified with that condition. The pleading and the evidence in this case, leave no room for a doubt as to the absence of any contract of sale of the wharf in question, from the plaintiffs to the corporation of Baton Rouge.

It is impossible to perceive upon what grounds the action of the Town Council can be made the foundation of a claim for damages against them. It is true they did not object to the erection of the plaintiffs' wharf; but this did not give to the latter the exclusive use of the bank of the river covered by their wharf. The banks of the river Mississippi are public property, subject to be used indiscriminately by the public at large. C. C. 446.

It is therefore ordered and decreed, that the judgment of the District Court be affirmed, with costs.